UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------- X
JARED WEITZ,

                Plaintiff,          **FINDINGS OF FACT and**
                                              **CONCLUSIONS OF LAW**
  -against-                          07-cv-1106(KAM)

CAROL WAGNER,

                Defendant.
----------------------------------- X

**MATSUMOTO,** United States District Judge:

        Plaintiff Jared Weitz ("Weitz" or "plaintiff") brought the pending action against defendant Carol Wagner ("Wagner" or "defendant") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., alleging that defendant obtained plaintiff's credit report on two occasions without a permissible purpose pursuant to the statute.[1] On November 24, 2008, the court conducted a one-day bench trial. Based upon the evidence at trial, the following are the court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

---

[1] Plaintiff additionally alleges defendant's conduct amounts to a criminal violation of 15 U.S.C. § 1681 et seq. and requests the court to refer "Carol Wagner to the appropriate United States Attorney for prosecution." (Compl. ¶ 31.) Plaintiff's request is denied. The United States Attorney's Office, not the federal courts determine if and when to file criminal charges; the court does not accept purported criminal complaints submitted by citizens and refer them to the U.S. Attorney's Office for prosecution. See, e.g., Fordjour v. CDCR Wardens, No. 07-cv-01114, , at *2-3 (E.D. Cal. Aug. 18, 2007).

**FINDINGS OF FACT**

In 2004, defendant was a finance manager at a car dealership. In that capacity, defendant assisted individuals clear their credit so that they could receive automobile loans. (Tr. 179.) Plaintiff dated defendant's daughter, Elyse Wagner, from 2004 until June 2005. (Tr. 19, 32.) When plaintiff started dating Elyse, he was struggling financially and Wagner attempted to assist plaintiff clear his credit so that he could get a student loan and attend college. (Tr. 20-24.)

With plaintiff's oral permission, defendant pulled plaintiff's credit report during the summer of 2004 to determine how much money plaintiff owed on his credit cards. (Tr. 22-23.) By doing so, plaintiff and defendant determined that plaintiff owed $2,579 to Washington Mutual and $1,244 to Palisades. (Tr. 73.) In approximately early September of 2004, defendant gave plaintiff $4,000 in cash so plaintiff could pay off his credit card debt and improve his credit score with the understanding that this money was a loan and plaintiff would pay her back. (Tr. 26, 71-74, 183.)

Defendant additionally bought an Apple computer, printer and computer bag for plaintiff on October 14, 2004, which cost $3,725.72, with the intention that plaintiff would eventually reimburse her for it. (Tr.27, 219.) Defendant also paid a portion of plaintiff's tuition to Nassau County Community

2

College, with the intention that she would be reimbursed when defendant received a student loan.  The first payment made to Nassau County Community College was by check dated August 16, 2004, the second was dated August 12, 2004, and the third was dated July 23, 2004.  (Tr. 235, 238; Joint Ex. 17.)  Although defendant understood that plaintiff would pay her back from the proceeds of a student loan, plaintiff never received a student loan.  (Tr. 183, 185-186.)

Because plaintiff's poor credit prevented him from obtaining a phone number in his own name, defendant paid his telephone bills.  (Tr. 175.)  During the course of plaintiff's relationship with defendant's daughter, plaintiff sought defendant's financial advice regarding stock he owned.  (Tr. 175, 231-233.)  Plaintiff often asked defendant "what should I do now" when he had a problem or when he needed money and defendant would help him.  (Tr. 184.)  For example, defendant arranged for a friend to provide free dental care to plaintiff. (Tr. 184.)

Defendant additionally assisted plaintiff in setting up a gold embleming business, originally operated by defendant's friend, which gold plated emblems on cars.  (Tr. 87.)  Defendant purchased the equipment and chemicals plaintiff used in the business from her friend for approximately $1,500, plus $250 per chemical use.  (Tr. 212-213.)  Defendant would market a "gold

3

package" to purchasers at the dealership and, when one was sold, plaintiff did the work.

Plaintiff moved to Louisiana at some point between fall 2004 and spring 2005 to be with defendant's daughter, who was attending college there. Defendant's son took over the gold embleming business at that time. (Tr. 28-29, 228-229.) When plaintiff moved, defendant transferred $200 a week into plaintiff's personal account at Commerce Bank. (Tr. 27.) Defendant also assisted plaintiff by paying for his apartment in New Orleans. (Tr. 176.)

In June 2005, plaintiff and defendant's daughter had moved back to New York and their relationship ended. (Tr. 32.) Plaintiff testified that, although plaintiff never asked defendant to help him out with his indebtedness (Tr. 70), he accepted her assistance. After the relationship between defendant's daughter and plaintiff ended, defendant received $3,000 from plaintiff's bank account to partially pay defendant back for the money defendant had advanced to plaintiff. (Tr. 54-55, 176.) Defendant cancelled the telephone service she was paying for and asked plaintiff to pay for the cancellation fee as well as the partial month of telephone service prior to the service being cancelled, totaling approximately $300. Plaintiff paid defendant $300. (Tr. 34-36.) Defendant then

4

told plaintiff that he owed her $159 for another bill; plaintiff did not pay defendant any additional money. (Tr. 36.)

Approximately one to two months later, defendant sued plaintiff in New York Small Claims Court alleging Weitz owed defendant $5,000. (Tr. 36.) The court papers alleged defendant had paid off plaintiff's credit card debt, paid plaintiff's Verizon telephone bill and paid for his college tuition. The small claims case went to trial on February 6, 2006. (Tr. 37-38; Ex. 6 & 7.) To ascertan the precise amount of money defendant paid on plaintiff's credit report, defendant asked her former colleague, Denise Zarick, at a different car dealership to pull plaintiff's credit report. Zarick pulled the credit report on January 31, 2006 with the understanding that defendant was helping plaintiff buy a car. This understanding was based on Zarick's past employment with defendant when she observed plaintiff come to the office where Zarick worked with defendant. Zarick observed defendant attempting to help plaintiff with his finances. (Tr. 133-140.) Defendant did not have plaintiff's specific consent to access his credit report in January 2006. (Tr. 61-62, 180) The Small Claims Court Judge never looked at the credit report, nor was it admitted into evidence. (Tr. 48-49.) Defendant used the report to refresh her recollection of the amount she paid for plaintiff's debts. A small claims

judgment was awarded in favor of defendant in an amount of $4,405.70. (Tr. 54; Ex. 7.)

Pursuant to the Small Claims Court judgment, plaintiff's bank account was frozen and his wages were garnished. Ultimately, plaintiff took out a loan and paid off the judgment in full in April 2007. (Tr. 56-57.) Plaintiff applied to four different places for the loan, three of which turned him down. The last place gave him a loan with an 18.99% interest rate. (Tr. 57.) By January 2006, there were at least 23 inquiries on plaintiff's credit history. Of those multiple inquiries, Wagner had caused plaintiff's credit report to be accessed once without his specific permission. (Tr. 67-68.)

## **CONCLUSIONS OF LAW**

The FCRA is a federal consumer protection statute enacted by Congress to ensure that consumer reporting agencies adopt reasonable procedures to protect the accuracy and confidentiality of consumer credit information. 15 U.S.C. § 1681b. Much of the FCRA regulates conduct of credit reporting agencies, however, the FCRA also extends to the conduct of parties who request credit information. See Stonehart v. Rosenthal, No. 01-cv-651, 2001 U.S. Dist. LEXIS 11566, at *10-11 (S.D.N.Y. Aug. 13, 2001). In this case, plaintiff alleges that defendant violated § 1681b of the FCRA by obtaining defendant's

credit report without a permissible purpose. As a result, plaintiff alleges that he is entitled to statutory and punitive damages.

To prove a violation of § 1681b, a plaintiff must show that a defendant had no permissible purpose in accessing plaintiff's credit. See Ostrander v. Unifund Corp., No. 07-cv-86, 2008 U.S. Dist. LEXIS 25040, at *6-7 (W.D.N.Y. Mar. 28, 2008) (dismissing plaintiff's FCRA cause of action for failure to state a cause of action, finding at least one permissible purpose for accessing the plaintiff's information); Stonehart, 2001 U.S. Dist. LEXIS 11566, at *12 (stating, "plaintiff must show that credit information was obtained for an impermissible purpose. Conversely, a showing of a permissible purpose is a complete defense."). To be liable for statutory and punitive damages pursuant to 15 U.S.C. § 1681n, the plaintiff must establish that the defendant acted willfully.

### A. Violation of Section 1681b

Weitz argues that Wagner obtained his credit report for an impermissible purpose, namely, "to use as evidence against plaintiff in a personal lawsuit." (Compl. ¶ 22.) However, even if this were the sole purpose for which Wagner accessed Weitz's credit report, Weitz has not established that this purpose is "impermissible" pursuant to the statute.

Although the accessing of a credit report for personal use is not a permissible purpose pursuant to the FCRA in certain circumstances (see J. Boyle's Rep. & Rec., Doc. No. 52, adopted by J. Korman at Doc. No. 54), here, the undisputed record clearly shows that Wagner caused Weitz's credit report to be accessed in order to determine the exact amount that she paid off on Weitz's two credit cards, so that she could recover that amount through her proceeding in New York Small Claims Court against the plaintiff. (Tr. at 198; see also Ans. ¶ 22 (the reason for seeking the credit report was "to establish how much money [defendant] advanced to the plaintiff").)

Section 1681b of the FCRA sets forth an exclusive list of permissible purposes for which a consumer credit report may be obtained. Pursuant to 15 U.S.C. § 1681b(a), "any consumer reporting agency may furnish a consumer report . . . (3) To a person which it has reason to believe --(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." District courts have interpreted "an account" to include debt collection for accounts other than pure "credit transactions," including collection of unpaid medical charges, child support arrears and rent. See Stonehart, 2001 U.S. Dist. 11566 at *13; Wright v. Bogs Mgmt. Inc., No. 98

C 2788, 2000 U.S. Dist. LEXIS 17837, at *54-55 (N.D. Ill. Nov. 29, 2000); Baker v. Bronx-Westchester Investigations, Inc., 850 F. Supp. 260, 262 (S.D.N.Y. 1994). Additionally, the credit transaction or review or collection of an account must be one involving the consumer on whom the information is to be furnished. Pintos v. Pac. Creditors Ass'n, 565 F.3d 1106, 1112 (9th Cir. 2009).

The court finds that Wagner's purpose for accessing Weitz's credit report was permissible under § 1681b(a)(3)(A). As confirmed by Judge Paradiso in the State Small Claims Court proceeding, Weitz owed an outstanding debt to Wagner and defendant accessed plaintiff's credit report to ascertain the precise amount plaintiff owed her so that the debt could thereafter be collected. Thus, defendant intended to use the consumer report information in connection with the review or collection of an account of the plaintiff, as permitted by § 1681b(a)(3)(A). See Stonehart, 2001 U.S. Dist. 11566, at *14-15 (defendant's accessing of plaintiff's credit report to verify plaintiff's address in order to locate her to collect a debt constituted a permissible purpose pursuant to § 1681b(a)(3)(A)); Wright, 2000 U.S. Dist. LEXIS 17837, at *53-55 (holding that a management company had a permissible purpose pursuant to § 1681b(a)(3)(A) to request a credit report of plaintiff who owed outstanding rent due to a bad check); Baker, 850 F. Supp.

9

at 262 (as a judgment creditor owed child support arrears from her ex-husband, defendant had a permissible purpose pursuant to §1681b(a)(3)(A) for accessing plaintiff's credit report in order to locate him to pay the debt).

In so finding, the court's conclusion is bolstered by a similar finding by the District Court for the Northern District of Illinois in Allen v. Kirkland & Ellis, No. 91 C 8271, 1992 U.S. Dist. LEXIS 12383 (N.D. Ill. Aug. 14, 1992). In that case, a law firm requested plaintiff's credit information with and for use in a pending litigation relating to the collection of an alleged business debt originating from a business transaction between the parties. Id. at *3-4. Although the court relied primarily on § 1681b(a)(3)(E), it further found that its conclusion was supported by § 1681b(a)(3)(A), "which lists collection of an account as a permissible purpose for requesting a credit report." Id. at *8.[2]

---

[2] The court notes that in denying defendant's motion for leave to amend her complaint to add the affirmative defense of a permissible purpose pursuant to 15 U.S.C. § 1681(a)(3)(A), Magistrate Judge Boyle stated that such an amendment would be futile because the "proposed second affirmative defense asserts that defendant obtained plaintiff's credit report for her own personal use." (Doc. No. 52 at 9.) However, even though defendant obtained plaintiff's credit report for her own personal use, that "personal use" was to aid in the collection of a debt. Therefore, now that the facts have been fully developed, the court respectively finds significant distinctions between this case and those cited by Magistrate Judge Boyle. To the extent that Judge Boyle stated an alternative basis for his decision not to allow defendant leave to amend her answer, the

10

Similarly, district courts have found that an attorney may obtain a consumer report for use in connection with a suit against the consumer to collect a credit account. <u>Greenhouse v. TRW, Inc.</u>, No. 96-cv-1496, 1998 U.S. Dist. LEXIS 1973, at *8-9 (E.D. La. Feb. 13, 1998) (consumer report permissibly obtained by an attorney in connection with a debt collection); <u>Korotki v. Attorney Servs. Corp., Inc.</u>, 931 F. Supp. 1269, 1276-77 (D. Md. 1996), <u>aff'd</u>, 131 F.3d 135 (4th Cir. 1997) (report was permissibly acquired by an attorney in connection with obtaining an address at which to serve the consumer to collect a debt owed to attorney's client); <u>see also</u> 16 C.F.R. Pt. 600 App. at Sec. 604(3)(E)(6)(e) ("An attorney collecting a debt for a creditor client, including a party suing on a debt or collecting on behalf of a judgment creditor or lien creditor, has a permissible purpose to obtain a consumer report on the debtor <u>to the same extent as the client</u>." (emphasis added)).

Because the court finds that the impermissible purpose proffered by plaintiff is, actually, a permissible purpose pursuant to § 1681b(a)(3)(A), plaintiff has failed to prove an "impermissible purpose" as required for a violation of the FCRA.

---

court finds plaintiff's arguments regarding the law of the case doctrine unavailing, particularly because the defendant's permissible purpose was properly pleaded in her original answer, the merits of which were not addressed by Judge Boyle.

As a result, there has been no violation of the FCRA and plaintiff is not entitled to damages.

**B. Liability**

Even if plaintiff had established a violation of § 1681b, which he did not, he has further failed to show that defendant acted willfully or that he suffered actual damages. Therefore, plaintiff is not entitled to relief.

1. <u>Section 1681n: Willful Failure to Comply with the FCRA</u>

Plaintiff seeks statutory damages and punitive damages. Pursuant to 15 U.S.C. 1681n, to be entitled to such, the plaintiff must show that the defendant "willfully fail[ed] to comply with any requirement" under § 1681b. In <u>Safeco Ins. Co. of Am. v. Burr</u>, the Supreme Court analyzed whether the phrase "willfully fails to comply" in § 1681n(a) covers reckless, as well as knowing, violations of the statute and concluded that it does. 551 U.S. 47, 56-60 (2007). The Supreme Court defined "recklessness" as conduct entailing "'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" <u>Id.</u> at 68 (citation omitted). In the context of the FCRA, an individual subject to the FCRA "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that [the individual] ran a risk of

12

violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69.

The court cannot conclude that defendant acted in reckless disregard of whether she was complying with the act, and, therefore, plaintiff has failed to establish "willful non-compliance," even if he had established an impermissible purpose. There is nothing before the court to suggest that defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. For the reasons stated supra in Part A, even if defendant had violated the FCRA by accessing plaintiff's credit report for an impermissible purpose, it would be based on a reasonable reading of the FCRA. Plaintiff has not brought to the court's attention any case in which the court found that the defendant did not have a permissible purpose pursuant to § 1681b(a)(3)(B) in circumstances similar to those before the court. Furthermore, the defendant did not have "the benefit of guidance from the courts of appeals or the Federal Trade Commission that might have warned [her] away from the view" that she acted with a permissible purpose. Id. at 70. As a result, defendant's conduct falls short of raising the "unjustifiably high risk" of violating the statute necessary for liability based on willful non-compliance. Id.

## 2. Section 1681n: Actual Damages

The court further notes that plaintiff's claim would fail in any event because he did not establish actual damages. Willful noncompliance with § 1681b subjects a party to civil liability pursuant to 15 U.S.C. § 1681n. Section 1681n(a) states, in relevant part:

> [a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1000, whichever is greater.

15 U.S.C. § 1681n. The Second Circuit interprets this statutory language as requiring proof of actual damages, in addition to willful non-compliance. See Northrop v. Hoffman of Simsbury, Inc., 12 Fed. Appx. 44, 50 (2d Cir. 2001) (affirming the district court's elimination of a jury's award of compensatory damages on a motion for judgment as a matter of law because there was no evidence of actual damages resulting from defendant's request for plaintiff's credit report (citing Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 473 (2d Cir. 1995))). Indeed, the Supreme Court has held that similar

14

statutory language contained in the Privacy Act of 1974 requires proof of actual damages for a plaintiff to be entitled to any recovery.  Doe v. Chao, 540 U.S. 614, 619 (2004) (holding that the language in the Privacy Act of 1974, "In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of-- (A) <u>actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000</u>", requires proof of actual damage in addition to a willful violation to be entitled to recovery (emphasis added)).  "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of "actual damages."  Crabhill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (citing Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996); Casella, 56 F.3d at 473; Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991)).

  Plaintiff has simply speculated that the credit report pulled by Wagner contributed to his inability to obtain a loan and poor credit rating.  In the summer of 2004, plaintiff's credit report showed that he owed $2,579 and $1,244 to two

15

creditors. (Tr. 73.) Defendant pulled the credit report at issue in January 2006. Plaintiff contends that as a result of this unauthorized pull, he had difficulty securing a loan and, once he did, it was at a high interest rate. (Tr. 57.) However, by January 2006, there were at least 23 inquiries on plaintiff's credit history and plaintiff presented no evidence as to how, if at all, a particular inquiry affected his credit score. (Tr. 67-68.) Moreover, plaintiff presented no evidence indicating that plaintiff was denied credit or that any extension of credit at a higher rate was the direct result of defendant accessing his credit report in January 2006. On this record, plaintiff has failed to prove a causal relationship between defendant's single credit inquiry and his purportedly high interest rate, particularly in light of the multiple inquiries into plaintiff's credit not attributed to defendant. Therefore, Weitz has not established actual damages, and is not entitled to compensatory damages, even if he could establish an impermissible purpose and willful non-compliance.

The court notes that actual damages are not a statutory prerequisite for punitive damages. <u>Northrop</u>, 12 Fed. Appx. at 50. Nevertheless, even if defendant had violated the statute, which she did not, the court finds that a punitive damage award is neither necessary nor appropriate to serve the goal of deterrence in this case. <u>Id.</u> at 51. Therefore,

16

plaintiff is not entitled to punitive damages pursuant to § 1681n(a)(3).

Because the court finds that, even if defendant violated the FCRA, defendant is not entitled to any relief, he is likewise not entitled to an award of attorney's fees pursuant to § 1681n(a)(3), which states, "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." In order to constitute a "successful action", the plaintiff must obtain formal judicial relief. <u>Crabhill</u>, 259 F.3d at 667.[3] Plaintiff has not obtained "success" pursuant to the FCRA and plaintiff would not be entitled to attorney's fees even if there had been a violation.

---

[3] Plaintiff's complaint does not seek actual damages, which would be recoverable had the defendant acted negligently. However, even assuming that the defendant was negligent, plaintiff's failure to establish actual damages would be fatal to his recovery for defendant's negligence. <u>See</u> <u>Casella</u>, 56 F.3d at 473.

## CONCLUSION

For the foregoing reasons, plaintiff has failed to establish that defendant obtained his credit report in violation of 15 U.S.C. § 1681b or that he is entitled to relief. The Clerk of the Court is directed to enter judgment for the defendant and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 24, 2009

                                              _____   /s/_____
                                              KIYO A. MATSUMOTO
                                              United States District Judge
                                              Eastern District of New York